**LAW OFFICE OF MICHAEL L. BROWN**
**MICHAEL L. BROWN**
222 North Court
Tucson, Arizona
85701
Ph.   (520)322-8180
mlbrownlaw@gmail.com
Attorney No. 016399
Attorney for Defendant Johnson

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States, | ) | CR22-2599-JGZ |
| | ) | |
| Plaintiff, | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| vs. | ) | |
| | ) | |
| Kyle Andrew Johnson, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | (Honorable Jennifer G. Zipps) |

The Defendant, Kyle Andrew Johnson submits the following Sentencing Memorandum for the Court's consideration.

## SYNOPSIS

The Defendant, Kyle Andrew Johnson (hereinafter, "Mr. Johnson" or "Kyle") is before the Court for sentencing on a charge of Aiding and Abetting False Statement in Connection with Acquisition of Firearm.  Mr. Johnson entered a plea agreement that provides for an effective sentencing range of 0 to 18 months, based upon the Court's consideration of the sentencing factors in 18 U.S.C. §3553(a) and his criminal history category.  Upon consideration of all the particular case facts and the 18 U.S.C. §3553 factors, Mr. Johnson respectfully requests this Court to impose a sentence of three (3) years of probation.

1

MICHAEL L. BROWN
3060 N. Swan Rd. #150
Tucson, Arizona 85712
520-322-8180 /Fax No. 318-0201

## I.    FACTUAL BACKGROUND

The factual information set forth in the Offense Conduct and Adjustment for Acceptance of Responsibility paragraphs of the Presentence Investigation Report ("PSR") (PSR at ¶47-8, 13, 16, 18, 20-23 and 49), presents a general overview of the facts and which document Mr. Johnson's limited role, remorse and acceptance of responsibility.

Kyle is a still young man.  He was 27 when the offense occurred.  In his statement of acceptance of responsibility, Kyle acknowledged his flawed decision making that was very much influenced by the parental pressure employed by his father and at times his brother  And while not offered as an excuse, Kyle has explained that the family history and in particular his troubling and damaged history with his father was confusing and challenging to evaluate and understand what his father was asking him to do.  Kyle has always been the forgotten or even abandoned member of the family and his desire to try to connect with his dad was difficult to manage in this situation.  That said, when Kyle's dad asked Kyle to get more involved, Kyle declined and as a result there was a further rupture in his attempts at a relationship with his father.

Additionally, Kyle's involvement in the offense was minor, if not minimal compared to the known scope of conduct undertaken by the co-defendants.  Kyle's father, Robert Johnson purchased 131 firearms, Ryo Jae Hyun, aka Tayler Johnson, purchased 52 firearms and Andrea Madison purchased 11 firearms, while Kyle purchased only 6 firearms.  (*PSR at ¶ 46-53)*.

## II.    CONSIDERATION OF THE SENTENCING FACTORS UNDER 18 U.S.C. 3553(a) WARRANTS A DOWNWARD VARIANCE

The Guidelines are not mandatory nor are they presumed to be reasonable. *Rita v. United States*, 127 U.S. S.Ct. 2456, 2465 (2007)(A Guideline sentence only "reflect[s] a rough approximation of [a] sentence that might achieve 3553(a)'s objectives.").  The sentencing court is no longer bound by the formulaic confines of the Guidelines.  In cases where the Guidelines conflict

with the §3553(a) sentencing factors, the statutory factors should generally prevail over the Guidelines. See *United States v. Denardi*, 892 F.2d 269, 276-77 (3rd Cir. 1989)(Becker, J. concurring in part, dissenting in part)(§3553(a) requires a sentence to be no greater than necessary to meet the four purposes of sentencing, imposition of a sentence greater than necessary to meet those purposes violates statute and is reversible, even if within the Guideline range). The sentencing court's task is to impose a sentence "sufficient, but not greater than necessary to achieve the goals of sentencing." *United States v. Kimbrough*, 552 U.S. 85 (2007).

Post *Booker*, the sentencing determination requires the sentencing court to weigh the statutory sentencing factors enumerated in §3553(a). Under §3553(a), the sentencing court is given broad discretion to craft a fair and just sentence. Under §3553(a) and *Gall v. United States*, 128 S.Ct. 586 (1008), the Supreme Court directed sentencing judges to specifically consider factors not ordinarily permitted under the Guidelines, many of which are relevant in this case. Further, under 18 U.S.C. §3661, "*no limitation*" shall be placed on the information concerning the background, character and conduct of [a defendant] which a court may receive and consider for the purpose of imposing an appropriate sentence. (emphasis added).

The Supreme Court's ruling in *Pepper v. United States*, 131 S.Ct. 1229, 1240, 562 U.S. 476, 488 (2011), is particularly relevant to the Court's sentencing considerations and the weight given to the individual nature, background history and character of Mr. Johnson. In explaining the factors a sentencing court can and must consider, the Court cited language from a seminal Guideline departure case, *Koon v. United States*, 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), as follows;

> "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113,

*MICHAEL L. BROWN*
*3060 N. Swan Rd. #150*
**Tucson, Arizona 85712**
**520-322-8180 /Fax No. 318-0201**

116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams,* 337 U.S., at 247, 69 S.Ct. 1079; see also *Pennsylvania ex rel. Sullivan v. Ashe,* 302 U.S. 51, 55, 58 S.Ct. 59, 82 L.Ed. 43 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender").

*Pepper at* 131 S.Ct. at 1240, 562 U.S. at 488 (2011). Mr. Johnson's individualized history is paramount to this Court's sentencing decision. Sentencing disparity should be avoided, but disparity considerations should not outweigh or rate on par with the individualized sentencing factors related to the nature, character and background of the defendant.

Based upon the §3553(a) sentencing factors, the following facts and circumstances support the mitigation/downward variance in the imposition of Mr. Johnson's sentence.

**1. Mr. Johnson's Challenged Family Background and Life History are Highly Mitigating Factors which Supports a Downward Variance in the Imposition of Sentence**

A defendant's personal history, upbringing and/or challenged circumstances are accepted mitigating factors and justified basis for a downward variance/departure. 18 U.S.C. §3553(a); U.S.S.G. §§ 5H1.3, 5K2.0; *U.S. v. Lopez*, 938 F.2d 1293 (9th Cir. 1991); *U.S. v. Diegert*, 916 F.2d 916, 919 (4th Cir. 1990). Accordingly, when the facts of a particular case show difficult family or personal circumstances, the court has the discretion to take the mitigating nature of those facts into account and lower the sentence imposed. 18 U.S.C. §3553(b); *Koon v. U.S.*, 518 U.S. 81, 95, 116 S.Ct. 2035, 2044-2045 (1996); U.S.S.G. §5K2.0.

- Kyle's upbringing was challenging and completely dysfunctional before and after his parents' divorce.

- Kyle was used as a pawn between his divorced parents and treated as property that could be moved around and manipulated in an effort to hurt the other parent.

- Kyle had no stable home life for long periods of time, when he would have to move

MICHAEL L. BROWN
3060 N. Swan Rd. #150
Tucson, Arizona 85712
520-322-8180 /Fax No. 318-0201

in with his father for a month or two and then have to go back with his mother for a month or two.

- Kyle was closest with his father and wanted to do anything to win his father's approval and recognition. As a result, Kyle's relationship with his mother was and still is constantly strained. Even as an adult, Kyle's relationship with his mother is colored and negatively affected by Kyle's desire to try to have a close relationship with his father.

- Due to his parents fighting and his ever-changing housing situation, school was never a focus or focal point for either parent. Kyle was lost between his parent's game-playing and constant manipulation. As a direct result, Kyle dropped out of school in the 10th grade. (Kyle aspires to get his GED and gain more education and work skills).

- Within Kyle's home life, he was a witness to domestic violence both verbal and physical. He was also witness to the use and abuse of alcohol at a young age.

- Due to Kyle's traumatic home life, Kyle developed both anxiety and depression. Neither parent had time to really notice, address or seemingly care that Kyle was struggling with himself and life.

- Kyle's deepening depression led to his introduction into groups of people at school who were using marijuana and alcohol. Kyle began using these substances to numb himself and self-medicate, even though he was too young to know that was what drew him to drug use.

- Ultimately, Kyle lost the strongly desired connection with his father and his father bonded more with Kyle's brother Taylor. Kyle's father used his power over Kyle to manipulate him, put him down and leave Kyle ever-seeking approval.

- For his part, Kyle could not get out of his Father's shadow or influence. For his own work life, Kyle has tried to emulate his father's former successful business in running a car repair shop. Kyle thought that opening his own business in this area would help his relationship with his father.

- Kyle is a hard worker, very hard worker and he had auto and mechanic skills. None the less, operating his own business in Nogales was very hard financially. Kyle struggled and was ridiculed by his father for his perceived failings.

- Ultimately, it was this dynamic or power over and manipulation over Kyle coupled with Kyle's desire to be accepted and on an equal footing with his brother that led to Kyle's limited involvement in this case.

- It is not surprising that Kyle was the last of the family members that his father manipulated into this illegal weapon activity. Kyle does have a strong sense of right

MICHAEL L. BROWN
3060 N. Swan Rd. #150
Tucson, Arizona 85712
520-322-8180 /Fax No. 318-0201

and wrong and his own character. Kyle's father knew that he might be able to get a little help from Kyle but that Kyle would not participate in the free style way his brother or even his aunt had, in purchasing many multiples of weapons for Robert Johnson.

- Kyle's father was deceptive and hid the real purpose for Kyle, telling him that he and his brother would all know be able to go out shooting or hunting, etc. Kyle's father manipulated him into telling him it was all legitimate and that it was "no big deal."

- Kyle's father exerted significant coercion, pressure and manipulation of Kyle to get him to get involved. When Kyle asked a few questions about what was going on, he was reprimanded, so Kyle stopped asking questions.

- Kyle's involvement in this case was 100% borne out of his desire to please and bow to the historical pressure and hold his father held over him. Kyle was not involved for the $50 his dad would sometimes give him for the 5-6 weapons that got purchased.

In addition to these factors, it should be considered that Mr. Johnson was still a very young man at 27 years-of-age. Mr. Johnson does not present as a worldly, or seasoned and in fact, much of his life experiences stunted his social, educational and emotional development. He has a good head on his shoulders and a strong sense of right and wrong and he wants to do better all the time. He wants to live his own life and get out from under the destructive parts of his remaining ties to his mother and father. Young people, like Mr. Johnson both in age and maturity make poor decisions, not because they are set on criminal conduct, but strongly so, because they fail to recognize the seriousness of their actions and the consequences. See *Roper v. Simmons*, 543 U.S. 551 (2005);(young people lack maturity and have an underdeveloped sense of responsibility and are more vulnerable and susceptible to negative influences). This fact coupled with the intense parental pressure and coercion were the direct cause of Kyle's limited involvement here.

With respect to Kyle's work ethic, Kyle has an overwhelming desire to work and be working all the time, to the detriment of almost all else. Mr. Johnson has worked to support himself since he was 15-years old. (*PSR at ¶110-118*). It is likely that he has been solidly employed at some job

MICHAEL L. BROWN
3060 N. Swan Rd. #150
Tucson, Arizona 85712
520-322-8180 /Fax No. 318-0201

since 2014 to present. Kyle's work history is a solid positive character trait.

Taken together, this additional information and explanation of Mr. Johnson's traumatic and challenged history and circumstances provides both further evidence of Mr. Johnson's good character and the basis for his youthful mistakes all of which support mitigation and downward variant factors under §3553(a) and §5K2.0 (Departures Not Adequately Considered). See *U.S. v. Roe*, 976 F.2d 1216 (9th Cir. 1992; *U.S. v. Walter*, 256 F.3d 891 (9th Cir. 2001); *U.S. v. Rivera*, 192 F.3d 81 (2nd Cir. 1999).

**2.     Mr. Johnson's Pretrial Performance has had Some Rocky Points but Overall, His Performance has been Good and Evidences that he Needs Continued Support and Services not Prison Time**

Kyle's pretrial performance has had some ups and downs but overall, coming from where Kyle was when he started pretrial release to present, there has been a significant amount of hard work, dedication and growth for Kyle during the past year.

- Kyle has not only attended but is an active participant in his counseling.

- For the first time in his life Kyle was able to get into some kind of treatment services.

- For the first time in his life, Kyle was able to understand his depression and anxiety, where is comes from, what triggers it, how to begin the process to acknowledge and work within himself to manage it, as positively as possible.

- Kyle continued to be engaged and stay enrolled in counseling and services even when his class obligations were completed.

- Kyle has developed a solid relationship with his peers and peer support specialist to help him through difficult times.

- Further, Kyle had the hardest transition onto pretrial than any of the other co-defendants. Kyle wanted to live with his grandmother as they are close and get along. Unfortunately, Kyle's brother began living there on his pretrial release. Kyle had no other option than to go live with his mother and sister.

- Kyle has a very difficult and strained relationship with both his mother and sister. It was and has been a hugely difficult process of living with his mother. There are old grudges and hurt that are/were being taken about on Kyle during his pretrial release.

MICHAEL L. BROWN
3060 N. Swan Rd. #150
Tucson, Arizona 85712
520-322-8180 /Fax No. 318-0201

MICHAEL L. BROWN
3060 N. Swan Rd. #150
Tucson, Arizona 85712
520-322-8180 /Fax No. 318-0201

- Kyle worked very hard to repair and manage that relationship, all the while trying to keep his business open in Nogales. Ultimately, he had to close his business, which was a crushing turn of events. That said, he immediately got a new job and continued his full-time employment.

- Recently Kyle has really felt the stress of the conclusion of this case. He took the probation report recommendation as the gospel that he was going to prison, and he became more depressed or had a depressive episodes.

- As a direct result, he relapsed, but due to the extent of his mental health struggles, he was taken to Palo Verde Behavioral Health for evaluation and treatment. Kyle tried to bounce back 100% from this but he was homeless when he got out of Palo Verde. He was scared to get his own apartment which he has saved money for, because he thought he would lose it all in 30 days if he went to prison.

- Kyle had a further alcohol relapse and again found himself at a mental health evaluation and treatment center.

- To his credit Kyle, went right back to work and right back into counseling and group meetings and reached out to both pretrial services and to probation for help and recommendations for treatment and housing options.

We cannot expect that a term of pretrial release will completely fix a lifetime of struggles and depressive patterns for Kyle. Nonetheless, it speaks volumes that despite the most recent issues, pretrial services did not seek to revoke Kyle because pretrial had firsthand knowledge of how hard Kyle had and was working to manage his life and struggles. So, while Kyle had some imperfections, the truth is that he proved himself to be a very good candidate for probation and he will thrive under the structure and services.

**CONCLUSION**

Mr. Johnson has fully accepted responsibility for his conduct, and he has expressed with both remorse and understanding for his poor decision-making. The sentencing court's task is to impose a sentence "sufficient, but not greater than necessary to achieve the goals of sentencing." Both deterrence and punishment will be met by a sentence probation and will avoid a significant sentencing disparity issue, in comparison to the probationary sentences of the more culpable

8

codefendants.

RESPECTFULLY SUBMITTED this <u>28th </u>day of February 2024.

LAW OFFICE OF MICHAEL L. BROWN

*s/ Michael L. Brown*

Michael L. Brown
Counsel for Defendant

Original of the foregoing filed this date
With the Clerk of the U.S. District Court
District of Arizona – Tucson

A copy of the foregoing electronically
delivered this date to:

Sarah Houston
Assistant U.S. Attorney

Willow Stokes
United States Probation

*MICHAEL L. BROWN*
*3060 N. Swan Rd. #150*
**Tucson, Arizona 85712**
**520-322-8180 /Fax No. 318-0201**