TIMOTHY COURCHAINE
United States Attorney
District of Arizona
SARAH B. HOUSTON
Assistant U.S. Attorney
Arizona State Bar No. 026691
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: sarah.houston@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR 22-02599-001-TUC-JGZ (BGM) |
|---|---|
| Plaintiff, | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| vs. | |
| Robert Andrew Johnson, | |
| Defendant. | |

The United States of America, through its attorneys, respectfully submits its sentencing memorandum in the above-captioned matter. The sentencing hearing is currently scheduled for March 31, 2026.

**Presentence Report Calculations**

The presentence report (PSR) identifies a total offense level of 25 and a criminal history category I for the defendant resulting in a sentencing guideline range of 57 to 71 months. The government agrees with these calculations. Under the plea agreement, the defendant's sentence cannot exceed the low end of the applicable guideline range.

//

**Sentencing Factors**

Title 18 U.S.C. § 3553(a) states that when imposing a sentence, a court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant." The sentence imposed shall reflect the seriousness of the offense, provide just punishment, afford adequate deterrence to further criminal conduct, and protect the public from further crimes of the defendant. 18 U.S.C. §3553(a)(2). The sentence shall also consider "the need to avoid unwarranted sentence disparities among defendants with similar records, who have been found guilty of similar conduct." 18 U.S.C. §3553(a)(6).

The defendant exploited his familial ties to get his two sons and sister to assist him in purchasing firearms to be smuggled into Mexico. Collectively they purchased approximately 200 firearms. The defendant was caught personally smuggling three firearms into Mexico. An additional five firearms were recovered in Mexico at crime scenes on other dates. An overwhelming number of the firearms have not been recovered.

The defendant, Robert, was living in Mexico with his wife during most of the time period he was engaged in the firearms trafficking scheme. Robert directed his codefendants to purchase specific firearms. The codefendants lied on the forms and declared that they were the final purchasers. Then the codefendants would give the firearms to Robert. Robert would reimburse the codefendants for the cost of the firearm and sometimes give them additional money. Robert set up accounts to facilitate the purchases and would sometimes accompany the codefendants to federally licensed firearms dealers when the firearms were purchased. He also used his mother's bank account to funnel funds to codefendants. The government has been unable to determine where Robert was getting the money for the firearms given that the money spent on firearms was disproportionate to any reported income he had during the time period. All of the codefendants knew that Robert was living in Mexico, and at least one codefendant told law enforcement that Robert had bragged about smuggling firearms into Mexico. Robert was also actively purchasing firearms himself including a .50 caliber rifle that he then tried to smuggle into Mexico.

The offense that the defendant committed is serious. Firearms and ammunition

trafficking, particularly the southbound flow of these items into Mexico, creates dire circumstances for communities in Mexico and the United States. The United States Government Accountability Office (GAO) produced a February 2021 report analyzing firearms trafficking into Mexico and efforts to disrupt it.[1] The report discusses the United States' national security and foreign security interests at stake and the connection between firearms smuggling and drug trafficking:

> Trafficking of U.S.-sourced firearms to Mexico is a U.S. national security threat, in part because it facilitates the illegal drug trade. A 2017 executive order noted that TCOs [transnational criminal organizations], including drug cartels, threaten the safety of the United States and its citizens.
>
> * * *
>
> In Mexico, weapons smuggled from the United States often end up in the hands of TCOs or other criminals, where they can be used against law enforcement officers and civilians, according to the *2020 Southwest Border Counternarcotics Strategy*. According to a 2010 report by DOJ's Inspector General, drug traffickers in Mexico turned to the United States as a primary source of weapons in part because Mexican law severely restricts gun ownership.
>
> * * *
>
> According to the *Southwest Border Counternarcotics Strategy*, Mexico continues to experience high rates of crime and violence due to the intense competition among TCOs to dominate lucrative smuggling corridors. Many of the TCOs that traffic drugs into the United States are also involved in the southbound flow of illicit drug proceeds and illegal weapons across the U.S. border. Throughout the United States, TCOs and subsidiary organizations, including drug cartels, derive revenue through widespread illegal conduct. Such conduct includes acts of violence and abuse that threaten the safety of U.S. citizens and show a wanton disregard for human life, according to the 2017 executive order.
>
> TCOs use firearms, ammunition, and explosives to protect their trafficking routes, drug processing locations, geographic drug trafficking areas, and illicit profits.[2]

---

[1] "U.S. Efforts to Disrupt Gun Smuggling into Mexico Would Benefit from Additional Data and Analysis" https://www.gao.gov/assets/gao-21-322.pdf, *accessed 3/25/2026*.

[2] *Id.*at pp. 3-4 (internal citations omitted).

A 2023 U.S. GAO audit of security aid to Mexico concluded that "U.S. Firearms trafficked into Mexico, along with the U.S.'s high demand for illegal drugs, contribute to security and drug crises on both sides of the border."[3] Mexico has seen more than 463,000 homicides since the Mexican government declared war on the Mexican cartels in 2006.[4]

The flow of firearms into Mexico remains troubling. Since January 20, 2025, ATF has seized 4,359 firearms bound for Mexico.[5] The firearms illegally trafficked into Mexico fuel cartel violence. According to Mexico's security Minister, Omar Harfuch, approximately 80% of firearms seized by Mexican authorities came from the United States.[6]

Given Robert's role in the offense and the seriousness of it, a prison sentence is appropriate.

While the codefendants each received a probationary sentence, their culpability was less than Robert's. Their roles were smaller and only Robert was aware of the details involved with each codefendant. He managed the funding for the firearms purchases and dictated what was purchased and when. He is also the only person involved who actively smuggled firearms into Mexico. While the defendant was convicted in Mexico and sentenced to six years and served approximately 3 years, that does not entirely negate the need for a sentence here. The defendant engaged in a dangerous offense that facilitated violence in two separate sovereign nations. That Robert would have to serve two separate

[3] "U.S. Assistance to Mexico", p.33, Sept. 2023, https://www.gao.gov/assets/gao-23-106871.pdf, *accessed 3/25/2026.*

[4] "Mexico's Long War:  Drugs, Crimes and the Cartels," Council on Foreign Relations,    https//www.cfr.org/backgrounder/mexico-long-war-drugs-crime-and-cartels, last updated on February 23, 2025, *accessed 3/25/2026.*

[5] "ATF Seizes Thousands of Illegal Firearms Bound for Cartels in Mexico," Bureau of Alcohol, Tobacco, Firearms, and Explosives, https://www.justice.gov/opa/pr/atf-seizes-thousands-illegal-firearms-bound-cartels-mexico, *accessed 3/25/2026.*

[6] "Inside the Supply Line Delivering American Guns to Mexican Cartels," The New York    Times,    https://www.nytimes.com/2026/03/17/world/americas/mexico-us-guns-trafficking-cartels.html, March 17, 2026, *accessed 3/25/2026.*

sentences is expected. Taking into account his serving of a foreign sentence, a sentence at the low end of the guideline range is not more serious than necessary to protect the community.

**Recommendation**

The United States agrees with the reasoning and recommendation in the PSR and respectfully requests that the Court impose a sentence of at the low end of the guideline range. Such a sentence would be consistent with § 3553(a) factors. It would reflect the seriousness of the offense, promote respect for the law, and deter the defendant from committing further crimes.

Respectfully submitted this 25th day of March, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/Sarah B. Houston*

SARAH B. HOUSTON
Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 25th day of March, 2025, to:

Mariam Ferguson, Esq.

- 5 -